COURT OF CHANCERY
OF THE
STATE OF DELAWARE

DANIELLE GIBBS
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Date Submitted: April 9, 2026
Date Decided:  May 7, 2026

Timothy S. Ferry, Esquire
Ferry Joseph, P.A.
1521 Concord Pike, Suite 202
Wilmington, DE 19803

Rhonda Corprew
2133 Bizzone Circle
Virginia Beach, VA 23464

Roger O. Corprew, Jr.
282 Windbrooke Lane
Viriginia Beach, VA 23462

Sean Moore
603 Avenue E
West Point, GA 31833

Re:  *In the Matter of the Estate of Arnetta Nichols Corprew*,
C.A. No. 2025-1008-DG

Dear Counsel and Beneficiaries:

This letter report addresses the issues raised by the parties during the

April 9, 2026, evidentiary hearing on Petitioner Milton D. Moore's petition to

probate a copy of the Last Will and Testament ("Will") of Arnetta Nichols

Corprew ("Decedent").[1]  For the reasons I explain below, I conclude that

Decedent did not revoke the Will and that the copy accurately reflects the

---

[1] *See generally* Amended Pet. to Admit Copy of Will to Probate, Dkt. 24 ("Am. Pet.").  The Decedent was also formerly known as Arnetta Evette Nicholas. *Id.* ¶ 4.

Will's terms and Decedent's testamentary intent. Therefore, I recommend the Court enter an order admitting the copy to probate.

## I. BACKGROUND[2]

On November 1, 2000, Decedent executed the Will in King County, Washington.[3] To assist with drafting the Will, Decedent engaged Janine A. Lawless, Esquire of *The Lawless Partnership* in Seattle.[4] The Will was signed by two witnesses and accompanied by an affidavit signed by Decedent and another witness.[5]

When Decedent executed the Will, she was married to Robert Austin Corprew and had no children.[6] Decedent and her spouse owned a home in Auburn, Washington, and real property in Washington, D.C.[7] Decedent and her spouse resided in the Auburn, Washington home.

---

[2] The following factual findings are based on the allegations in the pleadings, supporting exhibits, and testimony presented at the April 9, 2026, evidentiary hearing.

[3] Am. Pet. ¶ 6; *see* Am. Pet. Ex. D. ("Will").

[4] Am. Pet. ¶ 6.

[5] *See* Will 3–4.

[6] Will 1.

[7] It is not clear whether Decedent or her spouse, or the two together, owned these properties prior to Robert's death, but Decedent owned the properties by the time of her death.

Under the terms of the Will, all of Decedent's tangible property would be distributed in accordance with a "written memorandum" that Decedent intended to leave at her death.[8]  If no such memorandum was written, the Will bequeathed all of Decedent's property to Robert or, if he predeceased her, to the beneficiaries of her estate in substantially equal shares.[9]  Next, the Will disposed of Decedent's real property in Washington, D.C.[10]  Decedent bequeathed 75% of her interest in the D.C. property to her nephew, Petitioner, and divided the remaining 25% between Decedent's sister, Iolene Delores Moore,[11] and nephew, Sean Erique Moore.[12]  The Will next discussed the residuary estate.  Decedent bequeathed the remaining property to her husband Robert.  If Robert pre-deceased her, half of the residuary estate would be divided among Milton, Iolene, and Sean Moore.  The other half would be divided among Decedent's brother-in-law, Roderick O. Corprew,[13] her

---

[8] Will 1.

[9] Will ¶ 2.

[10] Will ¶ 3.

[11] Iolene Moore was also known as Iolene Delores Nichols.  *See* Am. Pet. Ex. C (Iolene's death certificate referring to her as Iolene Delores Nichols).  Iolene Moore passed away on May 22, 2011. Am. Pet. Ex. C. at 1.

[12] Will ¶ 3.

[13] Roderick Moore passed away on August 9, 2016.  Am. Pet. Ex. C. at 2.

husband's nephew, Roger O. Corprew, Jr., and her husband's niece, Rhonda E. Corprew.[14] Finally, the Will appointed Robert as the Personal Representative and Petitioner as the successor Personal Representative, if Robert could not serve.[15]

On September 16, 2020, Robert passed away from cancer.[16] After Robert's passing, Decedent was unable to live safely on her own in Washington. Members of Decedent's church contacted Petitioner with concerns about Decedent's well-being.[17] At some point, Decedent was diagnosed with dementia.[18] The family collectively decided that Decedent should sell her Auburn, Washington home and move to Delaware to be closer to them.[19]

On or around March, 2021, Decedent moved to Delaware with the assistance of her family.[20] A short time later, the family was able to place

---

[14] Will ¶ 4.

[15] Will ¶ 5.

[16] *See* Am. Pet. Ex. B.

[17] Tr. of Evidentiary Hearing 13:08–13:15; 18:07–18:13, Dkt. 29 ("Tr.").

[18] *See* Tr. 46:11–46:20.

[19] Tr. 13:16–13:18.

[20] Tr. 13:18–14:11; 31:19–32:14.

Decedent in a care facility in Milton.[21]   Decedent's home in Auburn, Washington was left alone for approximately two years.[22]

In or around March 2023, while working a job in Seattle, Petitioner's daughter, Jasmine Moore, visited and cared for Decedent's house in Auburn.[23] Jasmine also collected paperwork Petitioner needed to assist with Decedent's care in Delaware.[24]   At some point, Jasmine discovered a folder, labeled "Original," that contained the Will, Robert's will, durable powers of attorney for Decedent and Robert, and advanced healthcare directives left by the pair.[25] Jasmine took pictures of and digitally scanned the documents on her smartphone.[26]

On March 13, Jasmine mailed the original Will and other documents to Petitioner in Delaware.[27] Petitioner received them shortly after.[28] On or about

---

[21] Tr. 32:06–32:15.

[22] *See* Tr. 13:22–14:21; 18:14.

[23] Tr. 13:18–14:11.

[24] *Id.*

[25] Tr. 19:05–19:11 (contents of folder); Tr. 33:10–33:17 (folder labeled "Original").

[26] Tr. 21:20–25:18.

[27] Tr. 28:05–29:19.

[28] Tr. 36:06–37:24.

September 2024, Petitioner sold Decedent's Auburn home using his authority under the power of attorney Jasmine had mailed to him.[29]

Decedent passed away on May 8, 2025.[30] Petitioner then searched for the original Will that had been mailed to him, but he did not find it.[31] Petitioner attempted to contact the attorney who drafted the Will and discovered that *The Lawless Partnership* had dissolved, and he could not locate Janine Lawless.[32]

On September 5, Petitioner filed the Petition to Admit Copy of Will to Probate and attached a photocopy of the Will. [33] The Court scheduled a routine hearing on the petition for November 4.[34] On October 27, the Court received a letter from Rhonda Corprew indicating that Petition erroneously listed Roger Corprew, Jr. as deceased instead of his father, Roger Corprew,

---

[29] *See* Tr. 15:10–15:11; 44:15–44:18.

[30] Am. Pet. ¶ 5.

[31] Am. Pet. ¶¶ 7–8; Tr. 38:01–38:18.

[32] Am. Pet. ¶ 7.

[33] Dkt. 1.

[34] Dkt. 6.

Sr.[35] The Court granted a continuance to allow Petitioner's counsel to amend the petition.[36]

On November 4, the Court received a letter from Sean Moore objecting to the Petition on the grounds that the copy Petitioner sought to probate did not accurately contain the original Will's provisions.[37] On February 9, 2026, Petitioner filed an amended petition correcting the errors noted in Rhonda's October 27 letter.[38] The Court scheduled an evidentiary hearing on the matter for April 9. On March 16, Petitioner filed an affidavit of giving notice to interested parties.[39] On April 9, the Court held the evidentiary hearing and took the matter under advisement.[40]

## II. ANALYSIS

Petitioner comes to the Court seeking an order to probate a copy of the Will. "[W]hen addressing a request to probate a copy of a lost will, the Court

---

[35] Dkt. 10.

[36] *See* Dkts. 12–13.

[37] Dkt. 14.

[38] Dkt. 24.

[39] Dkt. 26.

[40] Dkt. 28.

engages in a two-step analysis."[41]   First, the Court must determine whether the purported will meets the statutory requirements of  Title 12 Section 202 of the Delaware Code.[42]   "Then, the Court must determine whether the decedent revoked the purported will[.]"[43]

### A.    The Will was validly executed.

"For a will to be valid, (1) the testator must have testamentary capacity, (2) the will must be in writing and signed by the testator or another person acting under the testator's express direction and in the testator's presence, and (3) the will must be signed by two credible witnesses."[44]   "Delaware law disfavors invalidating a testamentary plan and this Court therefore presumes that a will is valid [and] that a testator possessed testamentary capacity at the time she executed a will[.]"[45]

The parties do not dispute that Decedent validly executed a will.  The Will copy Petitioner presented to the Court is signed by Decedent and two

---

[41] *In re Nye*, 2022 WL 2287240, at *1 (Del. Ch. June 23, 2022) (citing *In re Est. of Dodd*, 2018 WL 3998428, at *2 (Del. Ch. Aug. 20, 2018)).

[42] *Est. of Dodd*, 2018 WL 3998428, at *2.

[43] *In re Nye*, 2022 WL 2287240, at *1.

[44] *Est. of Dodd*, 2018 WL 3998428, at *2 (citing 12 *Del. C.* §§ 201–03).

[45] *In re Kittila*, 2015 WL 688868, at *11 (Del. Ch. Feb. 18, 2015) (citing *In re Est. of West*, 522 A.2d 1256, 1263, 1265 (Del. 1987)).

witnesses.[46]  The Will is also accompanied by an affidavit that is sufficient to make the Will self-proving under Delaware law.[47]  Even if that were not the case, the weight of the evidence leads me to conclude that the Will was validly executed.

## B.      Decedent did not revoke the Will.

"It is presumed that someone who had a will intended to die testate."[48]  If a will was not in the testator's possession at the time it was lost and the testator did not order it destroyed, "then the contents of [the will] may be provided by sufficient evidence" such that it may be introduced to probate.[49]  Petitioner and Jasmine testified that they were last in possession of the Will before it was lost.  Therefore, the presumption of validity applies, and it is an objecting party's burden to rebut.[50]

---

[46] *See* Will at 3.

[47] *See* Will at 4; 12 *Del. C.* §§ 1305, 1306(b)(2); Wash. Rev. Code Ann. §§ 11.12.020, 11.20.020(2) (West).

[48] *Est. of Dodd*, 2018 WL 3998428, at *4 (quotation omitted).

[49] *See Dawson v. Smith*, 1866 WL 950, at *1 (Del. Super. 1866).

[50] *See In re Sandstrom*, 2016 WL 1304841, at *14 (Del. Ch. Apr. 4, 2016) (quoting *Dawson*, 1866 WL 950, at *5).

Sean Moore initially objected on the basis that the copy does not accurately reflect Decedent's Will.[51] During the hearing however, he appeared to withdraw his objection, testifying that he did not have any evidence that Decedent's testamentary intent changed after she executed the Will.[52] Also, Rhonda Corprew testified that she had many conversations with Decedent, that the Will Petitioner presented to the Court aligns with those conversations and that Decedent did not have another will.[53] During her testimony, Jasmine reviewed a video she recorded while scanning the Will in 2023.[54] Jasmine testified that the video accurately depicted her scanning each page of the Will onto her phone, and that this video is the same one she provided to Petitioner.[55] The Court thus has sufficient evidence to conclude that the copy contains the Will's provisions.

## III. CONCLUSION

Based on the record before me, I am satisfied that the Will was validly executed, was not revoked by Decedent, was unintentionally lost by

---

[51] *See* Dkt. 14.

[52] Tr. 52:08–57:23.

[53] *See* Tr. 45:02–47:24.

[54] *See* Tr. 20:13, 21:16–21:24.

[55] Tr. 24:03–29:20 (Jasmine's testimony regarding the video evidence).

Petitioner, and that the Will's terms have been satisfactorily proven. I conclude the copy adheres to Decedent's testamentary intent, and I recommend that the Court enter an order admitting Petitioner's proffered copy of the Will to probate.

This is a Final Report under Court of Chancery Rule 144.[56] Exceptions may be taken pursuant to Rule 144(c)(2).[57] Any previous stays on exceptions are hereby lifted. If there are no exceptions, this Final Report will become an order of the Court.[58]

Very truly yours,

*/s/ Danielle Gibbs*

Magistrate in Chancery

DG/jdb

---

[56] Ct. Ch. R. 144(b)(2).

[57] Ct. Ch. R. 144(c)(2).

[58] Ct. Ch. R. 144(c).